# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Mark Hoffert, Special Agent (SA) of the U.S. Homeland Security Investigations (HSI) Cleveland, Ohio, also hereinafter referred to as the "Affiant," being first duly sworn, depose and state as follows:

1. I am currently employed as a SA of HSI within the U.S. Department of Homeland Security (DHS). I have been a SA with HSI since 2019. Prior to that, I was a Border Patrol Agent in West Texas from 2009 until my employment with HSI. On two (2) separate occasions (2018 – 2019 and 2021 – 2022) I served as a Task Force Officer (TFO) on a Drug Enforcement Administration (DEA) High Intensity Drug Trafficking Area (HIDTA) Task Force where I conducted investigations into drug trafficking.

2. I am empowered by law to conduct investigations and to make arrests for federal offenses. I also am empowered under Title 19, United States Code, Section 1589a to serve any warrant under the authority of the United States and make warrantless felony arrests for any crime against the United States.

3. I have received specialized training at the Federal Law Enforcement Training Facility, located in Glynco, Georgia, regarding the identification of narcotic substances and the operation of drug trafficking organizations. As part of my training, I have received specialized instruction about narcotics, narcotics trafficking, money laundering, and various techniques for investigating people and organizations engaged in this unlawful conduct. I have participated on search warrants and have executed search warrants which have resulted in the seizure of illegal drugs and evidence of drug violations.

4. This affidavit is in support of a criminal complaint against Daniel MARQUEZ and Jamal STEWART. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigation conducted by other members of the Northwest Ohio Interdiction Task Force and other assisting law enforcement officers.

5. Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known concerning this investigation. I have set forth only the facts I believe necessary to establish probable cause that STEWART and MARQUEZ have committed a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A) and Title 18, United States Code, Section 2.

6. On February 11, 2026, Affiant along with other officers participated in surveillance activities in and around the Toledo, Ohio area, more specifically, the intersection of Secor Road and Executive Parkway.

7. During this surveillance, TFO Danielski observed a Hispanic male, later identified as Daniel MARQUEZ, approaching a Ford Expedition SUV with two (2) duffle bags, one appearing to be heavier than the other based on his posture as he walked. MARQUEZ was observed opening the rear hatch of the vehicle and placing both bags in the back of the vehicle before closing the hatch and entering the rear passenger seat.

8. After observing four (4) occupants, including MARQUEZ, in the vehicle, Jamale STEWART began driving the vehicle. Records indicate that STEWART rented the Ford Expedition SUV on/about February 3, 2026, in Dearborn, Michigan. The vehicle exited the Red Roof Inn parking lot onto Executive Parkway, where it continued eastbound until it reached Secor Road, where it continued northbound.

9. Your Affiant and TFO Joe Miller then began surveillance of the vehicle.

10. Your Affiant and TFO Miller both observed the vehicle as it turned onto Monroe Street. According to TFO Miller, STEWART committed a marked lane traffic violation as he turned from Secor onto Monroe. The vehicle then continued onto Monroe until entering the turn lane to turn onto Sylvania Avenue.

11. According to TFO Mike Garcia, based on the traffic violation observed by TFO Miller, he activated the emergency equipment on his marked police cruiser and conducted a vehicle stop on Harvest Lane in Toledo, Ohio. Upon exiting his vehicle, TFO Garcia was able to smell what he perceived to be marijuana. As he approached the vehicle, the odor of marijuana increased. When confronted with the fact that TFO Garcia could smell burned marijuana, STEWART admitted to having marijuana in the vehicle. At this point other members of the Task Force arrived on scene, and all four (4) subjects were asked to exit the vehicle.

12. While performing a protective sweep of STEWART's person, TFO Garica located a small plastic container that contained a quantity of what appeared to be marijuana. TFO Garcia also observed a packet of marijuana on the floor near the driver's seat, which STEWART stated was empty. STEWART was then ushered to the back of the vehicle where he placed his hands in the small of his back as if he expected to be handcuffed, without being prompted. STEWART

was then asked to stand at the front of TFO's cruiser so that TFO Garcia could address the rear driver's side passenger.

13. While performing a protective sweep of the rear driver's side passenger, TFO Garcia located a jar and a baggie of marijuana. During this time, TFO Garcia observed STEWART slowly moving away from the scene and advised STEWART that he was not free to leave and to return to where he was told to stand. TFO Garcia then told STEWART to place his hands behind his back to be handcuffed to which STEWART protested, indicating he wished to be handcuffed with his hands in front of his body. When TFO Garcia denied this request, STEWART shoved TFO Garcia and began running away from the scene. STEWART was quickly apprehended.

14. After securing the four occupants of the vehicle, TFO Garcia deployed his assigned K9 Partner, who is a certified narcotics detection dog, for a free-air sniff of the vehicle. TFO Garcia observed an alert from his K9 partner indicating the presence of an odor of narcotics.

15. A subsequent search of the vehicle, officers discovered in the rear of the vehicle in one of the two (2) duffle bags that MARQUEZ had placed in the vehicle, 10 individually wrapped kilogram size bundles consistent with narcotics smuggling. Two of these 10 bundles were field tested and indicated presumptive positive for the properties and characteristics of cocaine.

16. Interviews conducted by your Affiant and TFO Korsog of all four (4) subjects revealed conflicting information. The only consistent information was that all three (3) vehicle passengers were picked up at some point by the driver, STEWART. Timeframes varied from February 10, 2026, in the nighttime hours to February 11, 2026, in the late morning hours.

17. According to MARQUEZ, all four (4) individuals stayed the night on February 10 at the Red Roof Inn. STEWART stated that he picked up MARQUEZ in Toledo, Ohio but did not elaborate on the pickup of the other individuals, nor whether they may have stayed the night in Toledo. MARQUEZ stated that he lived with STEWART at an address in Detroit, Michigan.

18. Furthermore, during the interview of MARQUEZ, he stated that he did indeed possess a bag with clothing and documents and on several occasions referenced that his bag was not the "other bag". He also referenced that the "other bag" was already in the vehicle when he placed his bag in the rear of the vehicle. At that point in the interview there was no mention of any other bag or a bag containing anything illegal. MARQUEZ also stated that the other bag likely belonged to STEWART as STEWART was the driver of the vehicle and attempted to flee from the vehicle stop on foot.

19. During his interview, STEWART stated that he was confident that whatever was in the car would be claimed by the person whose property it was, but said it wasn't his.

20. Based on the information contained in this affidavit, I believe probable cause exists to establish that on February 11, 2026, in the Northern District of Ohio, Western Division, Daniel MARQUEZ and Jamale STEWART, committed a violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Respectfully submitted,

Mark Hoffert
Special Agent
United States Department of Homeland Security
Homeland Security Investigations

Sworn to via telephone on this 11th day of February 2026 after submission by reliable electronic means Fed.R.Crim.P. 4.1 and 41(d)(3).

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE